IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 07-cv-02020-LTB

LIEN HUYNH,

        Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

        Defendant.

___

ORDER
___

Plaintiff, Lien Huynh, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying her application for disability insurance benefits, filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral arguments will not materially aid in the resolution of this appeal. After consideration of the parties' briefs, as well as the administrative record, I AFFIRM the SSA Commissioner's final order.

## I. STATEMENT OF THE CASE

Plaintiff seeks judicial review of the Commissioner's decision denying her March 29, 2005 application for disability insurance benefits. [Administrative Record ("AR") 58] The application was initially denied on July 8, 2005. [AR 24] An Administrative Law Judge ("ALJ") subsequently conducted two hearings and issued a written ruling on May 25, 2007, denying Plaintiff's application on the basis that she could perform her past work, which precluded her claim of disability (Step Four). [AR 8] On July 26, 2007, the SSA Appeals Council denied Plaintiff's administrative request for review, making the denial final for the purpose of judicial

review. [AR 4] Plaintiff timely filed her complaint with this court seeking review of the SSA Commissioner's final decision.

## II. FACTS

Plaintiff was born in December 1955. [AR 58, 178] She completed the third grade in Vietnam before immigrating to the United States. [AR 101, 178] She testified that she could not read or write in either Vietnamese or English. [AR 182] Her prior work history consists of employment as an assembler and as a touch up screener of electronic circuit boards. [AR 98, 103, 135] Plaintiff alleges that she became disabled on January 7, 2005, due to adjustment disorder with anxiety and hypertension. [AR 58, 93, 97]

Plaintiff's medical records reveal that in February 2005, Dr. Michael C. Barlow, Plaintiff's treating physician, completed an initial examination form in which he diagnosed Plaintiff with hypertension, leg cramps and internal hemorrhoids. [AR 136] As a result, Dr. Barlow opined that Plaintiff was only able to perform sedentary work, defined as lifting no more than 10 pounds, and sitting with occasional walking and standing. [AR 137]

In July 2005, Plaintiff saw Paul Lam, Ph.D., a clinical psychotherapist, for a mental health evaluation based on her current stress, irritability, depressed mood, and pain. [AR 138] Plaintiff complained of various symptoms of anxiety including: racing thoughts; feeling tense, stressed and uptight; nervousness; worry – a sense of impending doom; low self esteem; concerns about looking inadequate; being easily fatigued; difficulties concentrating; irritability; muscle tension; bad dreams and sleep disturbance. [AR 139] She also endorsed some "mild depressed symptoms" of sadness, disappointment, worthlessness, and forgetfulness. [AR 139] Testing indicated Plaintiff had mild depression, a moderate level of anxiety and she endorsed a

theme of worry, sadness, failure, hardship, helplessness, and pessimism. [AR 142] Dr. Lam diagnosed Plaintiff with an adjustment disorder with anxiety and rated Plaintiff as having a global assessment of functioning (GAF) of 58, indicating moderate symptoms. [AR 141, 143]

In January 2007, Robert E. Pelc, Ph.D., a clinical and forensic psychologist, completed both a medical source statement regarding ability to do work activity (mental), and a psychiatric review technique form, at the request of the SSA. [AR 153, 156] Dr. Pelc assessed an adjustment disorder with anxiety. [AR 156] He opined that Plaintiff had mild restriction of her activities of daily living and maintaining concentration, persistence, and pace; and moderate limitations in social functioning, with no episodes of decompensation. [AR 66] Dr. Pelc further opined that Plaintiff could understand, remember, and carry out simple instructions, but that she would have moderate limitations with complex instructions and interaction with other people. [AR 153-54]

### III. LAW

A five-step sequential evaluation process is used to determine whether a claimant is disabled under Title II of the Social Security Act which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§ 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

Step One is whether the claimant is presently engaged in substantial gainful activity. If she is, disability benefits are denied. *See* 20 C.F.R. § 404.1520. Step Two is a determination whether the claimant has a medically severe impairment or combination of impairments as

3

governed by 20 C.F.R. § 404.1520(c). If the claimant is unable to show that her medical impairments would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits. Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. § 404.1520(d). If the impairment is not listed, she is not presumed to be conclusively disabled. Step Four then requires the claimant to show that her impairment(s) and assessed residual functional capacity ("RFC") prevent her from performing work that she has performed in the past. If the claimant is able to perform her previous work, the claimant is not disabled. *See* 20 C.F.R. § 404.1520(e)&(f). Finally, if the claimant establishes a *prima facie* case of disability based on the four steps discussed, the analysis proceeds to Step Five where the Commissioner has the burden of proving that the claimant has the RFC to perform other work in the national economy in view of her age, education and work experience. *See* 20 C.F.R. § 404.1520(g).

## IV. ALJ's RULING

The ALJ ruled that Plaintiff has not engaged in substantial gainful activity at any relevant time (Step One). [AR 13] The ALJ also found that Plaintiff has a severe impairment of affective disorder with anxiety and hypertension (Step Two). [AR 13] Because the ALJ determinated that she did not have a impairment or combination of impairments that meets or equals a listed impairment (Step Three), the ALJ went on to assess Plaintiff's RFC. [AR 13-14]

The ALJ evaluated the evidence and found that Plaintiff retains the RFC to:

perform unskilled, sedentary work as follows: lift and carry up to 10 pounds occasionally; sit up to 6 hours in an 8-hour day; stand and walk up to 2 hours in an

8-hour day; only simple instructions; limited interaction with supervisors, coworkers, and the general public; not requiring English fluency or literacy.

[AR 14] As a result of the RFC assessment, the ALJ found that Plaintiff was capable of performing past relevant work as touch-up screener, DOT 726.684-110, in that such work does not require the performance of work-related activities precluded by her RFC. [AR 30] Thus, the ALJ denied Plaintiff's application because she was not under a disability as defined by the SSA at Step Four of the sequential evaluation process. [AR 15] On review, the Appeals Council "found no reason" to review the ALJ's decision. [AR 4]

## V. STANDARD OF REVIEW

This court's review here is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001); *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000). Thus, the function of my review of the factual findings is to determine whether they "are based upon substantial evidence and inferences reasonably drawn therefrom; if they are so supported, they are conclusive upon [this] reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). With regard to the application of the law, my review is whether the Commissioner applied an incorrect legal standard, or failed to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## VI. SUBJECTIVE COMPLAINTS & PLAINTIFF'S CREDIBILITY

On appeal, Plaintiff first contends that the ALJ erred by not properly addressing and analyzing her subjective complaints of reduced functioning related to her anxiety and depression;

specifically, she argues that the ALJ failed to adequately address her claimed diminished ability to concentrate, to finish tasks in an appropriate fashion, to deal appropriately with other people, and to use her memory.

Plaintiff first asserts that the ALJ committed legal error by failing to apply *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), which sets forth a framework to assess a claimant's subjective complaints of non-extertional impairments such as pain or mental limitations. That analysis is as follows: (1) if the objective medical evidence establishes that the claimant has a physical or mental impairment capable of producing the nonexertional limitation at issue; and (2) accepting all the claimant's allegations as true, there is a loose nexus between the impairment and the nonexertional limitation alleged; then (3) the ALJ must consider all of the evidence – objective and subjective – to determine whether the nonexertional limitation is disabling. *Id.* at 163.

The ALJ summarized Plaintiff's testimony regarding her mental functioning and her ability to work as follows:

> the claimant testified that . . . [i]f she has to concentrate too hard on anything, she loses focus and feels as if she may 'pass out.' Some days she never gets out of bed, usually 6-7 days a month. On the days she does get up, she usually spends the day in her pajamas. The claimant indicates that her medication makes her very tired. In a typical day, she watches television and may exercise, walking one or two blocks. . . She feels worthless and helpless. She cries a lot, although now less that she used to. She has trouble concentrating and trouble remembering things. [AR 14]

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms and limitations. However, the ALJ concluded that "claimant's statements concerning the intensity, duration and limiting effects of these symptoms

are not entirely credible." The ALJ compared Plaintiff's testimony regarding her limitations with the fact that she acknowledged to doing some cooking and cleaning, and that she has no trouble with her personal hygiene. He further noted that she did not lose her job because she was not performing, but rather lost it when the company moved. [AR 14] The ALJ also relied on Plaintiff's report of her daily activities to Dr. Lam, which were that:

> she usually gets up about 6am and prepared breakfast and boxed lunches for her sons. After they leave she does chores and laundry, and then exercises for about 30 minutes. During a typical day, she prepares lunch for herself, then she does dishes and cleans the floor. She drives to local stores for groceries, but avoids driving distances and on highways. The claimant prepares dinner for herself and her sons and usually goes to bed between 9 or 10pm. [AR 15]

Finally, the ALJ notes that while not binding, Dr. Barlow did not opine that Plaintiff was disabled on the Colorado State Disability form used to assess Plaintiff's request for public assistance. [AR 15]

The ALJ's order followed the analytical framework set out in *Luna v. Bowen, supra*. The ALJ found that Plaintiff's adjustment disorder with anxiety results in non-extertional limitations in the form of being able to understand only simple instructions and limited social interactions. The ALJ incorporated these limitations within his assessment of Plaintiff's RFC. As such, the ALJ determined that Plaintiff's assessed mental impairment produced the nonexertional limitations at issue and, in addition, there was a nexus between the impairment and the nonexertional limitation alleged. However, when considering all of the evidence, the ALJ concluded that the limitations were not disabling. In so doing, the ALJ discredited Plaintiff's subjective testimony as to the restricting effect of the limitations and relied upon other evidence of the effect of the limitations on Plaintiff's ability to function.

Moreover, contrary to Plaintiff's argument here, the ALJ's order reveals that his credibility assessment was "closely and affirmatively linked to substantial evidence." *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995)(citations omitted). Because "[c]redibility determinations are peculiarly the province of the finder of fact" and the determination here was "supported by substantial evidence," I find no error by the ALJ. *Diaz v. Sec'y of Health & Human Servs.,* 898 F.2d 774, 777 (10th Cir. 1990). In addition, I reject Plaintiff's contention that the ALJ's credibility assessment was erroneous in that he failed to discuss that evidence of her lengthy work history or the fact that she attempted to answer the ALJ's questions in English.

I also address Plaintiff's related claim that the ALJ improperly evaluated her impairments resulting from her anxiety and her depression. Plaintiff argues that the ALJ specifically adopted the conclusions of the evaluating psychologists, but "ignored the effect that the admitted depression and anxiety would have on [Plaintiff's] ability to maintain employment." As such, Plaintiff contends that the ALJ improperly ignored the implications of evidence contrary to his conclusion, and instead discussed only evidence that favors a finding of non-compensability. *See Switzer v. Heckler,* 742 F.2d 382 (7th Cir. 1984).

First, contrary to Plaintiff's assertion, the ALJ in this case did not improperly "pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability." *See Hamlin v. Barnhart,* 365 F.3d 1208, 1219 (10th Cir. 2004)(*citing Switzer v. Heckler, supra,* 742 F.2d at 385-86).

The record is clear that the ALJ considered Plaintiff's claimed symptoms and diminished functioning related to her anxiety. For example, in his order the ALJ first concurred with Dr. Pelc's assessment that Plaintiff had only mild difficulty maintaining concentration, persistence of

pace, and moderate difficulties in maintaining social functioning with no episodes of decompensation. When deciding Plaintiff's RFC, the ALJ accepted Dr. Pelc's findings that Plaintiff:

> could understand, remember and carry out simple instructions, but that she would have difficulty with complex instructions and with making judgments on complex work-related decisions. He also felt that she would have difficulty interacting with supervisors, coworkers, and the general public, and that she would have trouble responding appropriately to unusual work situations and changes in a routine work setting. [AR 15]

The ALJ also incorporated Dr. Lam's conclusions, including his diagnosis of a GAF of 58. The ALJ noted that "a GAF of 51-60 is indicative of moderate symptoms, including flat affect and circumstantial speech and/or occasional panic attacks, or moderate difficulty in social, occupational, or school functioning, i.e. having few friends and/or conflicts with peers or coworkers." [AR 15] These assessments account for the ALJ's determination that Plaintiff was limited to work that required only simple instructions and limited interaction with supervisors, coworkers, and the general public. As such, I disagree with Plaintiff's assertion that the ALJ failed to consider her symptoms and diminished functioning related to her anxiety.

As to Plaintiff's claim that the ALJ did not properly address her limited functionality regarding her symptoms of depression, I first note that the ALJ did not find that Plaintiff's depression was a medically severe impairment under Step Two of the sequential process. None of the medical providers diagnosed or opined that Plaintiff suffers from the impairment of depression; rather, the medical records only note that Dr. Lam's testing revealed "mild depression." The doctors here assessed Plaintiff's symptoms as an anxiety disorder which, in turn, addressed her functional restrictions associated with any mild depression, such as her flat affect and difficulty in social and occupational interactions. And, as discussed, the ALJ

addressed these symptoms when assessing Plaintiff's RFC.

Finally, I reject Plaintiff's argument to the extent she contends that the ALJ erred by failing to consider the combined effects of all her impairments; specifically, that he did not consider the combined impact of both her anxiety and depression symptoms. Here, Plaintiff again argues that the ALJ did not consider the effects of her depression, and the resulting "difficulties with concentration and . . . lack of energy." And, for the first time in her reply brief, she contends that the ALJ did not consider Dr. Lam's finding that Plaintiff has difficulty concentrating, that she did not perform well on a "similarities test," and that she has "lower abstract and ability to catagorize." However, my review of the record reveals that the ALJ adequately assessed Plaintiff's functional limitations, and then satisfactorily addressed those limitations in her RFC. The ALJ's conclusions were supported by sufficient evidence in the record.

## VII. VOCATIONAL EXPERT TESTIMONY

Plaintiff also asserts that the ALJ failed to properly consider and evaluate expert evidence presented by the vocational specialist at Step Four of the sequential evaluation process. Plaintiff argues that the ALJ "ignored" the testimony on cross-examination of the vocational expert, Daniel B. Best, that undermined his conclusion that Plaintiff could perform her past work as a touch up screener.

At the hearing, Mr. Best was asked to assume that following vocational characteristics and limitations: a younger individual; who can speak broken English, but occasionally needs an interpreter; who is unable to read and write; who can perform only sedentary work; and has the following psychological limitations: mild restriction of activities of daily living and maintaining

concentration, persistence, and pace; moderate limitations in social functioning; no episodes of decompensation; the ability to understand, remember, and carry out simple instructions; and moderate limitations with complex instructions and interaction with other people (as assessed by Dr. Pelc). [AR 194, 153] Mr. Best testified that an individual with those vocational limits could perform work as a touch-up screener, printed circuit board assembly (DOT # 726.684-110). [AR 194]

On cross-examination by Plaintiff's attorney, Mr. Best testified that if the individual at issue has a mental disorder that had a "mild" impact on their ability to understand, remember and carry out simple instructions, such individual could still perform the job of touch-up screener. [AR 200] When asked if the three mild impairments together would "have a negative synergy in the person's ability to function in the employment place, even in a simple job like that?," and whether is was "common sense that three mild impacts would be significantly worse than one?" Mr. Best responded that would be a medical determination, but that the "mild impairment" as identified by Dr. Pelc "still allows reasonable performance of those activities." [AR 201] When asked again about the "commutative effect" of the impairments, Mr. Best responded that from a vocational perspective "the mild limitations are not going to have an impact." [AR 201] Finally, Mr. Best was asked if the commutative effect of all the impairments found by Dr. Pelc would have an impact on the individual's employability, he responded that Dr. Pelc's report addressed the commutative effect of the limitations by his conclusion that Plaintiff was "still capable of communication and appropriate interaction with others" and that while she may have moderate (as opposed to marked) difficulties with more complex interactions, she "still [has] the ability to function satisfactorily within all those categories." [AR 202-03] As such, Dr. Pelc's limitations

assessment in total "does not preclude the performance of past work, or . . . other forms of unskilled work." [AR 203]

Plaintiff argues that the ALJ erred in failing to consider this testimony when relying on Mr. Best's opinion and, as such, in concluding that Plaintiff could perform the job of a touch-up screener, However, Mr. Best's testimony on cross examination did not alter or undermine his conclusion; he consistently denied that the cummulative or hypothetical more restrictive effect of Plaintiff's limitations would preclude her from performing the job of touch up screener. Moreover, Mr. Best's testimony, when viewed in its entirety, does not lend "only to the conclusion that there is no significant gainful employment available" to Plaintiff. Rather, his testimony was consistent that given her RFC, as found by the ALJ, Plaintiff would be able to perform the job requirements of a touch up screener. As such, the ALJ did not err in concluding that Plaintiff failed to show that her impairments prevent her from performing work that she has performed in the past at Step Four of the sequential process.

## VIII. REMAINING CLAIMS OF ERROR

Finally, to the extent that Plaintiff argues that the employment available to Plaintiff does not exist is significant numbers, and that the ALJ should have applied 20 C.F.R. § 404.1563(d) – which provides that the SAA will consider a claimant's advanced age (age 50-54) – such considerations are relevant at Step Five of the sequential evaluation process. Because the ALJ here found that Plaintiff was disabled at Step Four, and I find no error in that determination, and an evaluation of these factors is neither relevant nor applicable here.

Accordingly, IT IS ORDERED that the Commissioner's decision is AFFIRMED.

Dated: December 24, 2009, in Denver, Colorado.

BY THE COURT:

/s/ Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE